**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2004
Decided June 27, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 03-3670

| | |
|---|---|
| XING DONG,<br> *Petitioner*, | Petition to Review Order of the Board of Immigration Appeals |
| *v.* | No. A70-899-900 |
| ALBERTO GONZALES,<br> *Respondent.* | |

**O R D E R**

In October 2000, an Immigration Judge denied Xing Dong's request for asylum and ordered him removed to China. The Board of Immigration Appeals affirmed. Long after the 90-day deadline for filing a motion to reopen had passed, Dong filed such a motion with the Board, claiming that the birth of his second child in the United States was the type of "changed circumstance" that both exempted him from the deadline and entitled him to asylum. The Board did not see matters that way: changed circumstances, it held, referred to events in the country of nationality, not to changes in the personal situation of the applicant. It denied the motion as untimely. Dong petitions for review, on the ground that the Board abused its discretion and should have considered his new evidence. We conclude that the Board's interpretation was one that it was entitled to adopt, and we therefore deny the petition for review.

Dong is a native of China's Fujian province. He entered the United States without inspection in 1991 or 1992. In 1993, he applied for asylum based both on past persecution on account of his political opinion, namely, his opposition to China's

coercive family planning practices, and on his fear of future persecution should he ever return. In 1996, while his asylum application was pending, he obtained advance parole from the then-Immigration and Naturalization Service (now the Bureau of Immigration and Customs Enforcement in the Department of Homeland Security) to return to China to visit his ailing mother. He returned to the United States and was readmitted in December 1996. In 1999, an asylum officer denied his application and terminated his parole status. In due course the INS served him with a Notice to Appear charging that he was removable.

At the asylum interview, Dong testified that he fled China in 1991 when his wife was pregnant with their first child, because his wife's doctor threatened both him and his wife that they would be sterilized as soon as the child was born. In fact, they were not even supposed to be having that child, because they had failed to register their marriage promptly and they had failed to obtain a permit before his wife became pregnant. As a result, family planning officials first requested that his wife have an abortion, but later settled for having the Dongs pay a fine of 500 rmb (approximately $60 US) and promise that the wife would obtain an IUD after she gave birth. Even with this, Dong's work unit did not approve of the pregnancy, and he ultimately lost his job because of his position on the family planning policy. In 1992, after his son was born, he fled China.

At the 2000 removal hearing following the asylum officer's decision, Dong conceded removability and applied for asylum and withholding of removal. He relied on the expanded definition of the term refugee enacted by the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which extended asylum protection to victims of coercive population control practices, such as abortion and sterilization. See Pub. L. No. 104-208, § 601(a)(1), 110 Stat. 3009, 3009-689 (Sept. 30, 1996) (codified at 8 U.S.C. § 1101(a)(42)(B)). The IJ denied both applications and ordered Dong removed. In his oral opinion, the IJ relied in part on Dong's inability to explain certain inconsistencies between his 1993 request for asylum and his later testimony, such as whether he left China before or after his son was born. On November 22, 2002, the Board summarily affirmed the IJ's decision without opinion under its streamlining procedure, 8 C.F.R. § 1003.1(e)(4). Dong did not file a petition for review from that order with this court.

In June 2003, more than 90 days after the Board's decision, Dong filed a motion with the Board to reopen his case based on new evidence that he pointed out was not available at the October 2000 hearing: the 2001 birth of his second child in Albany, New York. He argued that his motion to reopen was not subject to the normal 90-day deadline because it relied on "changed circumstances arising in the country of nationality." See 8 C.F.R. § 1003.2(c)(3)(ii). He reasoned that the birth of his daughter in the United States transformed him into a violator of China's notorious one-child policy, and that this meant that circumstances *in China* had changed for him. In

addition, he urged the Board to reopen his case "in the interests of justice" to protect him from forcible sterilization. Dong attached three exhibits as evidence that his fear of forcible sterilization was well-founded: (1) the transcript of a hearing before the US House of Representatives Committee on International Relations entitled "Coercive Population Control in China: New Evidence of Forced Abortion and Forced Sterilization," dated October 17, 2001; (2) and (3) affidavits dated December 6, 2002, and February 27, 2003, from John Shields Aird, self-described as a "retired demographer formerly employed at the United States Bureau of the Census as a specialist on demographic developments and population policy in China."

On September 23, 2003, the Board denied Dong's motion as untimely. First, of course, the motion was not filed within 90 days of the Board's order affirming the IJ's decision, and second, Dong had failed to establish changed circumstances in China. The Board stated, without further elaboration, that "the birth of children in the United States does not amount to 'changed circumstances arising in the country of nationality.'" Dong filed a petition in this court seeking to obtain review of both the Board's November 22, 2002, summary affirmance and its order of September 23, 2003, denying his motion to reopen. Because the filing was late insofar as it related to the November 22, 2002, order, this court in an earlier order limited Dong's petition to the Board's denial of his motion to reopen.

We review the Board's decisions on motions to reopen only for abuse of discretion. See *Pelinkovic v. Ashcroft,* 366 F.3d 532, 536 (7th Cir. 2004). In general, motions to reopen are strongly disfavored. *Id.* Nonetheless, we will reverse the Board's decision if it was made without a rational explanation. *Mansour v. INS*, 230 F.3d 902, 907 (7th Cir. 2000). In addition, the exercise of discretion requires the Board to consider all pertinent facts and circumstances. *Nwaokolo v. INS,* 314 F.3d 303, 307 (7th Cir. 2002).

Although Dong's case bears some superficial similarity to that of the petitioner in *Lin v. Ashcroft,* 385 F.3d 748 (7th Cir. 2004), it is different in one crucial respect. The petitioner in *Lin* filed a timely petition for review from the Board's decision on her asylum application, but Dong did not. Unlike in *Lin*, therefore, we do not have the adverse merits decision before us directly; we are considering only the exercise of the Board's discretion not to reopen the case.

Dong realizes this, and he has undertaken to persuade us that the birth of his daughter in the United States was the type of changed circumstance that should allow him to avoid the limits on motions to reopen. These limitations had their origin in regulations issued by the Attorney General under authority conferred in the Immigration Act of 1990, Pub. L. No. 101-649, § 545(d)(1), 104 Stat. 4978, 5066 (Nov. 29, 1990); they were later enacted into statutory law in 1996, see IIRIRA, §§ 240(a), (b), 110 Stat. 3009-593 (codified at 8 U.S.C. § 1229a(c)(6)). Under § 1229a(c)(6)(C)(i), an

alien must file a motion to reopen within 90 days of the Board's final decision. Congress also provided for a narrow exception to that rule for a motion to reopen that is based on "changed country conditions arising in the country of nationality." 8 U.S.C. § 1229a(c)(6)(C)(ii).

Dong's problem is that the birth of his daughter in New York has no effect at all on country conditions in China. He urges us to read the statutory language in such a way that changes in personal circumstances are exempted altogether from the time limitations, but we see no legitimate way to do so. Not surprisingly, Dong has pointed to no authority that has adopted the adventurous interpretation he advocates. In fact, the Second Circuit has explicitly rejected it. See *Guan v. Ashcroft,* 345 F.3d 47, 49 (2d Cir. 2003). To similar effect, the Ninth Circuit has held that the regulation that preceded § 1229a(c)(6) did not permit motions to reopen based on changes in US asylum law. *Azanor v. Ashcroft,* 364 F.3d 1013, 1022 (9th Cir. 2004). The court in *Azanor* commented that the public interest in finality required a narrow reading of the exceptions to the 90-day rule. *Id.*

Dong also argues that the Board abused its discretion in failing to consider three additional points that show changed conditions in China: (1) evidence of the potential harm to Dong's wife occasioned by her daughter's birth; (2) the potential harm to the daughter if she is effectively forced to relocate to China as a result of her parents' removal; and (3) three exhibits attached to his motion showing that the Chinese policy is genuinely coercive and clearly applicable to him and his wife. Dong did not raise these grounds in his motion to reopen before the Board, however, nor did he submit his exhibits to the Board. He is therefore not entitled to rely on these arguments in this court. We add that even if we were to give him the benefit of the doubt on that point, these exhibits do not overcome the flaw in his basic position. We have no doubt that there are still instances in China where coercive family planning policies hold sway. Dong, however, failed to pursue his claim at the proper time, and we cannot say that the Board abused its discretion in denying his motion to reopen.

The petition for review is DENIED.